This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Randy P. Linton has appealed from his conviction on three counts of gross sexual imposition in violation of R.C.2907.05(A)(4) and his designation as a sexual predator. This Court affirms.
 I.
On Thursday, November 20, 1997, Kristi Watson spent the night with her friend Samantha Wagar at Samantha's mother's house. Samantha's mother had divorced Samantha's biological father several years before and had married Defendant. Samantha and an older sister named Jessica lived with their mother and Defendant. Samantha's oldest sister Jeannette lived with their biological father.
That night, while Samantha's mother packed for a trip, Samantha, Kristi, and Defendant watched television. Kristi sat on the couch with Defendant and Samantha sat on the floor. At some point, Defendant leaned over to Kristi and shoved his hand up under her shirt and touched her breast. He then slid his hand down into Kristi's pants beneath her underwear and touched her pubic region. Shortly thereafter, he left the room to get some snacks for the girls. After returning with the snacks, he groped Kristi again in a similar manner. When he stopped, Kristi climbed off of the couch and moved away from him. Defendant asked Kristi to come back and sit on the couch with him again, but Kristi refused. Defendant eventually went to his own bedroom and fell asleep, and Kristi and Samantha slept on the sofa bed in the living room.
The next day Kristi reported this incident to her mother and the police were contacted. Samantha had been sent to her biological father's house for a scheduled visitation, so the police contacted Samantha's biological father and stepmother to see if a detective could speak with Samantha about Kristi's allegations. Upon hearing that the police wanted to speak with her and being told about Kristi's allegations, Samantha exclaimed: "Well, I thought I was the only one that he did that to."
Based on the statements made by Kristi and Samantha, Defendant was charged with two counts of gross sexual imposition for improperly touching Kristi and one count for improperly touching Samantha. Defendant pled not guilty and the case was tried to a jury. Kristi and Samantha were both permitted to testify on behalf of the prosecution and Defendant testified on his own behalf. The jury returned a verdict of guilty on all three counts. Defendant was sentenced to five years imprisonment on each count to be served concurrently and was designated a sexual predator. Defendant timely appealed, raising ten assignments of error.
 II. A.
First Assignment of Error
 [DEFENDANT] WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BY THE COURT'S OVERRULING OF HIS RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AND BY THE VERDICT OF GUILTY OF GROSS SEXUAL IMPOSITION, AS CHARGED IN COUNT THREE OF THE INDICTMENT, BECAUSE NEITHER DECISION WAS SUPPORTED BY SUFFICIENT EVIDENCE.
Under this assignment of error, Defendant has challenged the sufficiency of the evidence supporting his conviction on the third count relating to Samantha. When reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring).
Defendant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which states:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
Defendant has argued that the conviction relating to Samantha was not supported by sufficient evidence because Samantha denied that he had ever touched her improperly when she testified at trial. He has asserted that because there was no touching, there could not have been any "sexual contact," and, therefore, he did not commit gross sexual imposition in relation to Samantha.
At trial, Samantha testified that on the night in question she sat on the couch with Defendant while they were watching television and that his hand fell into her pants when he fell asleep. Samantha testified that she pulled his hand out of her pants before he touched anything. However, Samantha's sister testified that upon hearing about Kristi's accusations, Samantha exclaimed: "Well, I thought I was the only one that he did that to." Samantha's sister also testified that Samantha's statements have changed since the night she was first confronted with Kristi's accusations. There was also evidence that Samantha's mother pressured Samantha to testify favorably for Defendant. For instance, Samantha testified as follows:
 Q. Samantha, did your mom ever say anything what happened to her (sic) if [Defendant] got found guilty (sic)?
A. Yes.
Q. What did she say?
 A. She said she [would] probably lose the house and we would have to go live somewhere else.
Q. When your mom gets upset, does it make you sad, too?
A. Yes.
Q. What would you like to see happen, Samantha?
A. I would like to see my stepdad come home.
Q. And is that what your mom wants, too?
 A. Yes. Actually, she wants our whole family back together.
Q. Okay. Do you wish this never happened?
A. Yes.
In conclusion, the prosecution provided sufficient evidence challenging the veracity of Samantha's testimony to permit a rational trier of fact to conclude that Defendant actually did touch Samantha in an erogenous zone and that Samantha's testimony to the contrary was merely a misguided attempt to please her mother. Defendant's first assignment of error is overruled.
 B.
Second Assignment of Error
 THE JURY VERDICTS OF GUILTY OF GROSS SEXUAL IMPOSITION, AS CHARGED IN COUNTS ONE AND TWO OF THE INDICTMENT, ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Under this assignment of error, Defendant has challenged the weight of the evidence supporting his convictions on the two counts relating to Kristi. The appropriate standard of review for a challenge to the weight of the evidence is set forth in Thompkins, supra, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Kristi unequivocally testified to the conduct set forth above. Although there was some testimony attacking Kristi's credibility by implying that Kristi had lied about portions of her story, that testimony came primarily from Defendant, Samantha, and Samantha's mother. On appeal, Defendant has continued the assault on Kristi's credibility by noting that Kristi acted normally that night, that Kristi failed to tell anyone about the incident until the next day, and that the prosecution presented no physical evidence to corroborate Kristi's story. However, a jury could reasonably conclude that a child confronted with a difficult situation like this would be reluctant to raise the issue outside the presence of their parents. Also, an allegation of improper touching would probably not leave any physical evidence, such as bruising, hairs, or bodily fluids. Therefore, it is not surprising that the prosecution failed to present any such evidence.
Although Defendant has attacked Kristi's credibility, he has offered no explanation as to why Kristi would lie about this incident. Of all the people involved in this case, Kristi was the one person who had nothing to gain by manufacturing her story. Quite to the contrary, Kristi had much to lose by publicly airing these accusations; Kristi lost her best friend, Samantha, and alienated a family with whom she had previously been very close.
After reviewing the evidence, this Court cannot conclude that the jury clearly lost its way and created a manifest injustice by relying on Kristi's testimony. As such, this case is not one of the exceptional cases in which a new trial is warranted. Defendant's second assignment of error is overruled.
 C.
Third Assignment of Error
 [DEFENDANT] WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE COURT'S RULING WHICH PERMITTED THE PRINCIPLE INVESTIGATING DETECTIVE TO TESTIFY THAT APPELLANT WAS A LIAR.
Although Defendant's arguments pertaining to this assignment of error are not entirely clear, it appears that he has argued that the investigating officer was improperly permitted to provide opinion testimony concerning Defendant's credibility. The testimony complained of was elicited after the investigating detective had described his initial encounter with Defendant. The detective testified that, in the course of his investigation, he went to Defendant's home to discuss the allegations. Defendant repeatedly denied that he was Randy Linton, asserted that he was merely a housekeeper, and refused to allow the detective inside to check on the safety of Samantha and her sisters. Defendant finally admitted that he was Randy Linton and allowed the detective to come inside only after a uniformed police officer stepped forward and displayed his badge. At the close of the detective's testimony, the following exchange occurred:
Q. So what did you do then after you left the house?
A. I was bothered by these lies.
MR. WEBER: Objection.
THE COURT: Overruled.
The prosecution again asked the detective what he did and the detective proceeded to describe his actions, without ever again raising the issue of Defendant's credibility.
Crim.R. 33(E) provides:
 No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
* * *
 (3) The admission or rejection of any evidence offered against or for the defendant, unless the defendant was or may have been prejudiced thereby[.]
See, also, R.C. 2945.83(C). Additionally, Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."
Assuming arguendo that the above statement was improper, it was not prejudicial. Initially, the detective did not generally attack Defendant's credibility. Instead, the detective merely stated that Defendant had denied that he was Mr. Linton and characterized these denials as lies. Most importantly, however, Defendant admitted that he did initially lie about his identity. He explained that he did so because it was dark outside, he had just been awakened by the detective, and he did not realize that the detective was a police officer. With all of this information, the jury was capable of making its own evaluation of Defendant's credibility without being swayed by the detective's characterization. As such, Defendant's third assignment of error is overruled.
 D.
Fourth Assignment of Error
 [DEFENDANT] WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE COURT'S RULING WHICH PERMITTED THE PROSECUTOR TO INTRODUCE EVIDENCE AND ARGUE THAT APPELLANT HAD FAILED TO DENY HIS GUILT TO INVESTIGATING DETECTIVES.
It is well established in Ohio that,
 [a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.
State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated on other grounds, 438 U.S. 911, 57 L.Ed.2d 1156. In the instant case, Defendant failed to object to the officers' testimony and failed to object during the prosecutor's arguments. Accordingly, Defendant's fourth assignment of error is overruled.
 E.
Fifth Assignment of Error
 [DEFENDANT] WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE COURT'S RULING WHICH PERMITTED WITNESSES TO TESTIFY THAT AN ALLEGED VICTIM HAD CHANGED HER STORY.
Again, Defendant failed to object to this testimony. Therefore, his fifth assignment of error is overruled. Williams, supra.
 F.
Sixth Assignment of Error
 [DEFENDANT] WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE COURT'S RULING WHICH PERMITTED CROSS[-]EXAMINATION OF GAIL LINTON THAT SHE WOULD INVITE [DEFENDANT] BACK INTO THE HOME IF [DEFENDANT] WAS ACQUITTAL [sic].
Under this assignment of error, Defendant has challenged the following exchange from the testimony of Samantha's mother:
 Q. And as far as you are concerned, if he's found not guilty and you were permitted, you would invite him back into your home tomorrow?
MR. WEBER: Objection.
THE COURT: Overruled.
 THE WITNESS: There is another legal matter that I have to contact my attorney yet to clarify because of the custody battle that we have going on right now.
BY MS. McCARTY:
Q. Involving Domestic Relations Court?
A. Correct.
 Q. Okay. And the issue of the, as you call it, custody battle, Mr. Wagar filed for custody of the two younger girls after this incident occurred, didn't he?
A. That's correct.
MS. McCARTY: No further questions.
On appeal, Defendant has argued that the prosecutor's question was irrelevant and prejudicial. However, as the preceding excerpt illustrates, the witness never answered the question. Therefore, for all intents and purposes, the objection was sustained. The jury never found out whether or not Samantha's mother would invite Defendant back into her home. As such, Defendant's sixth assignment of error is overruled.
 G.
Seventh Assignment of Error
 [DEFENDANT] WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY MISCONDUCT OF THE PROSECUTING ATTORNEY.
Under this assignment of error, Defendant has challenged the following questions by the prosecutor:
 Q. And [Defendant's attorney] asked you if you were aware that whether or not your husband expressed interest in little girls, your response was no?
A. That's right.
 Q. The fact is, your daughters have complained about sexually inappropriate comments —
MR. WEBER: Your Honor, I am going to object.
 THE COURT: All right. Let me see counsel at side bar.
At side bar, the trial court questioned Samantha's two sisters about the alleged sexually inappropriate comments. Jeannette, the oldest sister, explained that Defendant once told her to wear a more revealing bathing suit because it looked better on her than the less revealing suit. Jessica, the next oldest sister, said that Defendant had told her she looked good and that she had a great body and that if he were sixteen years old he would be after her. Jessica admitted that this made her feel uncomfortable, but explained that she always gets uncomfortable when people comment on her looks and that Defendant has not said anything about her looks since she complained about his comments to Defendant and her mother. The trial court ultimately sustained the objection, concluding that this evidence was not very probative and was too prejudicial to allow.
On appeal, Defendant has claimed that the prosecutor committed misconduct by asking the question without having a good-faith belief that a factual predicate for the question exists. See State v. Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus. Essentially, Defendant argues that the statements of the sisters do not support a good-faith belief.
The Supreme Court of Ohio adopted the good-faith test partially because "`effective cross-examination often requires a tentative and probing approach to the witness' direct testimony, and this cannot always be done with hard proof in hand of every assumed fact.'" Id. at 231, quoting Hazel v. United States (D.C.App. 1974), 319 A.2d 136, 139. Although Defendant's comments to Samantha's sisters may not constitute hard proof of flagrant sexuality, this Court concludes that they were sufficiently suggestive to provide the prosecutor with a good-faith belief that a factual predicate for the question existed. Defendant's seventh assignment of error is overruled.
 H.
Eighth Assignment of Error
 IT WAS ERROR, IN VIOLATION OF SECTION 2929.14(A)(C) [sic], TO SENTENCE [DEFENDANT] TO THE MAXIMUM PERIOD OF FIVE (5) YEARS FOR EACH OF THE THREE (3) COUNTS OF THE INDICTMENT.
Defendant was convicted of violating R.C. 2907.05(A)(4), which is classified as a third degree felony. R.C. 2907.05(B). Pursuant to R.C. 2929.13(C), "in determining whether to impose a prison term as a sanction for a felony of the third degree * * *, the sentencing court shall comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code." In the instant case, in regard to R.C. 2929.11 and 2929.12, the trial court stated in its sentencing entry:
 The Court further finds the Defendant is not amenable to community control and that prison is consistent with the purposes of [R.C.] 2929.11.
 Further, the Court has determined that several of the seriousness and recidivism factors listed in [R.C.] 2929.12
are applicable in this case: the mental injury suffered by the two (2) minor victims, as evidenced by their testimony in trial, and the psychological treatment records, was exacerbated due to the impressionable age of the children; the victims suffered serious psychological harm as a result of the offense; and the offender's relationship with the victims facilitated the offense. Additionally, the Defendant continues to deny the offense, and has demonstrated no genuine remorse for the offenses, [R.C.] 2929.12(D)(5).
Defendant has not challenged the sufficiency of these findings or the trial court's compliance with R.C. 2929.13(C).
Once the trial court has determined pursuant to R.C.2929.13(C) that a prison sanction should be imposed for a third degree felony violation, the trial court may sentence a defendant to one to five years of incarceration. R.C. 2929.14(A)(3). However, pursuant to R.C. 2929.14(C),
 the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *.
The trial court herein sentenced Defendant to the maximum of five years of incarceration on each count. Defendant has argued on appeal that the trial court violated R.C. 2929.14(C) by sentencing him to the longest prison term authorized without finding that his crime was the worst form of the offense or that he posed the greatest likelihood of committing future crimes.
The Supreme Court of Ohio recently interpreted R.C.2929.14(C) and 2929.19(B)(2)(d) in State v. Edmonson (1999),86 Ohio St.3d 324. In the instant case, the trial court has not complied with the Supreme Court's interpretation of R.C.2929.14(C) and 2929.19(B)(2)(d) as set forth in Edmonson. As such, Defendant's sentence is reversed and the cause is remanded for resentencing in compliance with Edmonson.
 I.
Ninth Assignment of Error
 THE TRIAL COURT VIOLATED SECTION 2929.19(B)(3) BY FAILING TO INFORM [DEFENDANT] OF THE SENTENCING EXTENTION (sic) AUTHORITY OF THE PAROLE BOARD AND THE PROVISIONS OF POST-RELEASE CONTROL.
Although the prosecution has conceded that the trial court failed to comply with R.C. 2929.19(B)(3), it has contended that this was merely a technical, procedural error that was not prejudicial. However, in State v. Shine (Apr. 29, 1999), Cuyahoga App. No. 74053, unreported, 1999 Ohio App. LEXIS 1932, at *10, the Eighth District Court of Appeals specifically rejected a similar argument, noting that "the sentencing court's duty under R.C.2929.19(B)(3) is mandatory and the court is required at the sentencing hearing to notify the offender that he is subject to `bad time' violations and post-release controls." See, also, State v. Grundy (Dec. 9, 1998), Summit App. No. 19016, unreported at 13-14; State v. Lazenby (Nov. 13, 1998), Union App. No. 14-98-39, unreported, 1998 Ohio App. LEXIS 5636, at *11, overruled on other grounds by State v. Martin (June 23, 1999), Crawford App. No. 3-98-31, unreported, 1999 Ohio App. LEXIS 2842. As such, Defendant's sentence is also reversed and remanded for resentencing in compliance with R.C. 2929.19(B)(3).
 J.
Tenth Assignment of Error
 THE COURT'S FINDING THAT [DEFENDANT] WAS A SEXUAL PREDATOR IS ERRONEOUS AND IN CONTRAVENTION OF SECTION 2950.09.
Under this assignment of error, Defendant has argued that the sexual predator finding was not supported by the evidence. In support of this contention, Defendant has noted that the prosecution failed to present any evidence at the hearing. The prosecution tacitly admitted that it failed to present any additional evidence at the sexual predator hearing, but has argued that the facts underlying the instant convictions were sufficient to support the conclusion that Defendant is a sexual predator.
R.C. 2950.01(E) defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Pursuant to R.C. 2950.01(G)(2), an offender is "adjudicated as being a sexual predator" if,
 [r]egardless of when the sexually oriented offense was committed, on or after the effective date of this section, the offender is sentenced for a sexually oriented offense, and the sentencing judge determines pursuant to division (B) of section 2950.09 of the Revised Code that the offender is a sexual predator.
Because Defendant was sentenced after the effective date of this section, the trial court was required to proceed under division (B) of R.C. 2950.09.
R.C. 2950.09(B)(1) requires the trial court to hold a hearing to determine whether the offender is a sexual predator. R.C.2950.09(B)(2) provides that the trial court may consider any relevant factors in making its decision and lists certain factors to be considered. R.C. 2950.09(B)(3) states: "After reviewing all testimony and evidence presented at the hearing * * * and the factors specified in division (B)(2) of this section, the judge shall determine by clear and convincing evidence whether the offender is a sexual predator."
 Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
The crime of gross sexual imposition in violation of R.C.2907.05 is specifically included within the definition of "sexually oriented offense." R.C. 2950.01(D)(1). Therefore, the only issue herein is whether there was clear and convincing evidence that Defendant is likely to engage in the future in a sexually oriented offense.
In the instant case, the trial court specifically referred to the following factors from R.C. 2950.09(B)(2):
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
* * *
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The trial court noted that Defendant molested two nine-year-old girls, that he used his position of trust with the girls to gain their confidence, and that after molesting Kristi twice he asked her to come back and sit with him again. The trial court concluded that,
 Defendant's conduct, repeated in nature, demonstrates that Defendant has no appreciation or insight into the wrongfulness and/or potential psychological damage his actions had to the two minor children. Defendant's lack of remorse and insight indicates that he would be likely to reoffend.
After reviewing the record, this Court cannot say that the trial court erred in concluding that Defendant was likely to engage in the future in another sexual offense. As this Court previously noted in State v. Maynard (Mar. 31, 1999), Lorain App. No. 97CA006908, unreported, there is,
 [O]verwhelming statistical evidence supporting the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children. The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable.
Id. at 9, quoting State v. Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830, unreported, 1998 Ohio App. LEXIS 801. Therefore, the age of Defendant's victims, coupled with the repeated and persistent nature of his offenses against Kristi, is sufficient evidence to create a firm belief or conviction that Defendant is likely to engage in another sexual offense. Defendant's tenth assignment of error is overruled.
 III.
In conclusion, the findings of guilt and the sexual predator designation are affirmed. However, Defendant's sentence is reversed and the cause is remanded for resentencing in compliance with Edmonson, supra, and R.C. 2929.19(B)(3).
Judgment affirmed in part, reversed in part, and cause remanded.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ BETH WHITMORE
FOR THE COURT
BAIRD, P.J.
BATCHELDER, J. CONCUR